UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JUSTIN J. BOQUET**                                                        **CIVIL ACTION**

**VERSUS**                                                                  **NO. 14-2228**

**DANIEL BELANGER, ET AL.**                                                 **SECTION I**

## ORDER AND REASONS

The Court has pending before it motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants, Craig LeBouef ("LeBouef")[1] and Francis Armand Kouame ("Kouame").[2] Plaintiff, Justin J. Boquet ("Boquet"), has responded[3] and the motions are now ripe for decision.

## BACKGROUND

According to the first amended complaint,[4] on November 29, 2013, plaintiff went to a Walmart Supercenter in Houma, Louisiana.[5] Plaintiff "was carrying a holstered Taurus PT609 semi-

---

[1] R. Doc. No. 8.
[2] R. Doc. No. 10.
[3] R. Doc. Nos. 9, 12.
[4] Plaintiff filed a complaint on September 26, 2014, R. Doc. No. 1, and a first amended complaint on December 10, 2014, R. Doc. No. 3. The initial complaint named the City of Houma as a defendant, R. Doc. No. 1, ¶ 5, while the first amended complaint names Terrebonne Parish Consolidated Government as a defendant, R. Doc. No. 3, ¶ 5. The Court will address the factual allegations as set forth in the first amended complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").
[5] R. Doc. No. 3, ¶ 1. The Court notes that November 29, 2013, was the day after Thanksgiving, *i.e.*, "Black Friday." *See Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 379 (E.D.N.Y. 2000) ("Further judicial notice is taken of the fact that November 26, 1998 was Thanksgiving . . . .").

1

automatic pistol clearly visible on his right hip."[6] Plaintiff alleges that "Walmart does not have a policy prohibiting customers from lawfully carrying firearms on their property" and that it has a protocol for confronting customers carrying firearms:

> Walmart has a policy of permitting customers to carry firearms and to only intervene if someone expresses concern. Walmart's policy is that if and when someone has expressed concern, a *salaried* employee approaches and addresses the armed customer; the customer is then *asked* to remove the firearm from the premises. According to Walmart policy, the customer is only to be told to leave if the customer refuses to remove the firearm and is "extremely abusive or disruptive"; otherwise, customers who refuse to remove the firearm are allowed to keep it and remain. Walmart policy provides for involving law enforcement only if a customer refuses to leave after being told to do so twice, with the second such instruction including a notification that law enforcement will be contacted if they do not leave.[7]

Plaintiff asserts claims against three individuals alleged to have been involved in the events which led to the filing of this lawsuit. Craig LeBouef is alleged to have been "at all times relevant to this complaint an employee of Walmart, employed in a security capacity at the Walmart" and "a retired police officer, formerly a Lieutenant of the Houma Police Department."[8] Francis Armand Kouame is alleged to have been an Assistant Manager at the Walmart.[9] Sergeant Daniel Belanger ("Sergeant Belanger") is alleged to have been "duly appointed and acting as an officer of the Houma Police Department."[10] Plaintiff alleges that "Belanger was not a salaried employee of Walmart,"[11] but he also appears to allege that Belanger was employed by Walmart in some capacity because

---

[6] R. Doc. No. 3, ¶ 10.
[7] R. Doc. No. 3, ¶ 13.
[8] R. Doc. No. 3, ¶ 8. In his motion, LeBouef asserts that he retired from Walmart security in 2012 and that he acted as a private citizen at all relevant times. R. Doc. No. 8-2, at 1. Because this is a Rule 12(b)(6) motion to dismiss, the Court takes the well-pleaded facts of the first amended complaint as true.
[9] R. Doc. No. 3, ¶ 7.
[10] R. Doc. No. 3, ¶ 6.
[11] R. Doc. No. 3, ¶ 15.

"Kouame's job responsibilities include supervising other employees, including Sgt. Belanger."[12]

According to plaintiff, both LeBouef and Kouame contacted Sergeant Belanger after seeing plaintiff in the Walmart with his gun on the day in question.[13] LeBouef is alleged to have "informed Sgt. Belanger that Walmart had a policy against customers carrying firearms, despite actual knowledge on the part of Mr. LeBouef that this was not so."[14] Then, as plaintiff "was standing at the sporting goods counter and had just returned a rifle to the store associate . . . he was suddenly, and without any warning, grabbed from behind by Sgt. Belanger."[15] Ultimately, Sergeant Belanger took plaintiff's gun, handcuffed plaintiff, and escorted him from the Walmart.[16] "Kouame was present at and witnessed the exchange but did not intervene" and he "did not correct Sgt. Belanger's false statement of Walmart's policy regarding customers with firearms."[17] Furthermore, "Kouame physically assisted Sgt. Belanger's seizure of Mr. Boquet's firearm by providing an extra pair of hands to hold the firearm" while Sergeant Belanger handcuffed plaintiff.[18] Plaintiff does not allege any facts suggesting LeBouef's presence or involvement during this incident.

After escorting plaintiff from the Walmart in handcuffs, Sergeant Belanger "requested backup" and another officer searched plaintiff and seized the handgun and magazine, a pocket knife,

---

[12]R. Doc. No. 3, ¶ 27.
[13]R. Doc. No. 3, ¶¶ 16, 17. Plaintiff alleges in the alternative that either LeBouef or Kouame called Sergeant Belanger first. R. Doc. No. 3, ¶ 17.
[14]R. Doc. No. 3, ¶ 16.
[15]R. Doc. No. 3, ¶ 18.
[16]*See* R. Doc. No. 3, ¶¶ 18-33.
[17]R. Doc. No. 3, ¶ 27.
[18]R. Doc. No. 3, ¶ 27; *see also* R. Doc. No. 3, ¶ 24 ("After some period of conversation, Sgt. Belanger removed Mr. Boquet's firearm, removed the magazine from the firearm, handed the firearm to Mr. Kouame, handcuffed [plaintiff], and retrieved the firearm from Mr. Kouame.").

and fourteen additional rounds of ammunition.[19] Plaintiff was then taken to jail.[20] Plaintiff alleges that he requested the return of the fourteen rounds of ammunition, but that "an employee of the Houma Police Department claimed that there was a departmental policy against returning ammunition."[21]

Count one of the first amended complaint alleges state-law claims of assault, battery, and false imprisonment against Sergeant Belanger, Kouame, and LeBouef.[22] Count two of the first amended complaint alleges state-law claims of intentional and negligent infliction of emotional distress against Sergeant Belanger, Kouame, and LeBouef.[23] Count three asserts a claim for damages pursuant to 42 U.S.C. § 1983 against Sergeant Belanger, Kouame, LeBouef, and the Terrebonne Parish Consolidated Government.[24]

## STANDARD OF LAW

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[19] R. Doc. No. 3, ¶ 31-32.
[20] R. Doc. No. 3, ¶ 33.
[21] R. Doc. No. 3, at ¶ 36.
[22] R. Doc. No. 3, at ¶¶ 38-48.
[23] R. Doc. No. 3, at ¶¶ 49-57.
[24] R. Doc. No. 3, at ¶¶ 58-71.

4

>true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

## ANALYSIS

**A.    Section 1983**

"To state a cause of action under section 1983 the [plaintiff] must allege that the person who deprived him of a federal right was acting under color of law." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). "For a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Id.* "[A] non-state actor may be liable under 1983 if the private citizen was 'a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). "The plaintiff must allege: (1) an agreement between the private and public defendants to commit an

5

illegal act and (2) a deprivation of constitutional rights." *Id.*[25]

"Allegations that are merely conclusory, without reference to specific facts, will not suffice" to allege a conspiracy. *Id.* (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)). For example, in *Priester*, the plaintiff attempted to allege a conspiracy between a high school football player and coaches through allegations that the coaches "either ignored or 'encouraged and/or allowed'" the player's attack on a teammate. *Id.* at 420. The Fifth Circuit held that these conclusory allegations "failed to allege a conspiracy" and affirmed the Rule 12(b)(6) dismissal of the § 1983 claim against the teammate, a private citizen. *See id.*

Both LeBouef and Kouame move to dismiss plaintiff's 42 U.S.C. § 1983 claim. LeBouef's motion to dismiss is granted as to that claim because plaintiff expressly abandoned his § 1983 claim against LeBouef.[26] Kouame contends that he is not liable pursuant to 42 U.S.C. § 1983 because he is a private citizen, not a state actor, and because he did not personally violate any of plaintiff's constitutional rights.[27] Plaintiff responds that he states a plausible § 1983 claim against Kouame because Kouame allegedly was Sergeant Belanger's supervisor and he was "not a bystander in the incident, but instead a joint participant."[28]

---

[25]The parties refer to *Morris v. Dillard Department Stores, Inc.*, in which the Fifth Circuit addressed "a § 1983 claim brought against a private employer defendant . . . in which an off-duty police officer is employed as a private security guard and detains, searches or arrests the customer of his private employer subsequent to a report of suspicion made by another employee." 277 F.3d 743, 748 (5th Cir. 2001). In *Morris*, the Fifth Circuit stated that it "will not subject a *merchant* to § 1983 liability unless an officer has failed to perform an independent investigation." *Id.* at 750 (emphasis added). But plaintiff has not sued Walmart, the merchant, so *Morris* has no obvious applicability to this § 1983 claim against Kouame.
[26]R. Doc. No. 9, at 2.
[27]R. Doc. No. 10-2, at 7-8.
[28]R. Doc. No. 12, at 2; *see also* R. Doc. No. 12, at 4 ("Plaintiff suggests that in physically aiding in an arrest and property seizure by a police officer, even in a minor role, a person becomes a state actor.").

6

Here, Kouame is indisputably a private citizen, and no party suggests that Sergeant Belanger was not a state actor. Accordingly, to state a claim for § 1983 liability against Kouame, plaintiff must allege facts showing "an agreement" between Kouame and Sergeant Belanger to violate plaintiff's federal rights. *See id.* Plaintiff does not use the word "agreement" in his complaint; he does, however, allege that Kouame (1) "saw [plaintiff] and contacted Sgt. Belanger,"[29] (2) "remained present through [plaintiff] being handcuffed and removed from the building by Sgt. Belanger,"[30] (3) held plaintiff's gun for the period of time it took Sergeant Belanger to handcuff plaintiff,[31] and (4) "witnessed the exchange but did not intervene" and he "did not correct Sgt. Belanger's false statement of Walmart's policy regarding customers with firearms."[32] Furthermore, plaintiff alleges, albeit with less than ideal clarity, that Sergeant Belanger was an employee of Walmart and that he was Kouame's "subordinate."[33]

Construing these factual allegations in plaintiff's favor and drawing all reasonable inferences from them, plaintiff has sufficiently alleged an agreement or "action in concert" between Kouame and Sergeant Belanger to violate plaintiff's federal rights. Standing alone, plaintiff's allegations that Kouame "remained present" and "witnessed the exchange but did not intervene" would be comparable to the legally insufficient allegations of a conspiracy in *Priester*. But plaintiff alleges

---

[29] R. Doc. No. 3, ¶ 17.
[30] R. Doc. No. 3, ¶ 17.
[31] R. Doc. No. 3, ¶ 24; *see also* R. Doc. No. 3, ¶ 27 ("Mr. Kouame physically assisted Sgt. Belanger's seizure of Mr. Boquet's firearm by providing an extra pair of hands to hold the firearm.").
[32] R. Doc. No. 3, ¶ 27.
[33] R. Doc. No. 3, ¶ 27. Kouame apparently contends that "Sgt. Belanger was not a Wal-Mart employee and was acting in his capacity as a Houma police officer at the time of the subject incident," but the Court must accept plaintiff's factual allegations as true for the purposes of deciding this Rule 12(b)(6) motion.

7

additional facts suggesting a degree of direct participation that was missing in *Priester*; specifically, plaintiff alleges that Kouame was Sergeant Belanger's supervisor, contacted Sergeant Belanger about plaintiff, and "physically assisted Sgt. Belanger's seizure of [plaintiff's] firearm by providing an extra pair of hands."[34] At the present stage of the proceedings, this suffices to withstand Kouame's Rule 12(b)(6) motion.[35] Although Kouame vigorously contends that the incident was entirely plaintiff's fault,[36] that defense is better reserved for a potential motion for summary judgment or trial. Accordingly, Kouame's motion to dismiss plaintiff's § 1983 claim against him should be denied.[37]

**B.     State-law Claims**

    **1.)     Assault, Battery, False Imprisonment**

"Battery is a harmful or offensive contact with a person, resulting from an act intended to

---

[34]R. Doc. No. 3, at ¶ 27.

[35]Kouame also contends that the § 1983 claim against him should be dismissed because none of the alleged constitutional violations "resulted from any claimed actions by Mr. Kouame." R. Doc. No. 10-2, at 8. As explained above, "plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Priester*, 354 F.3d at 420. At this time, the alleged seizure of plaintiff by Sergeant Belanger plausibly states a claim for a violation of plaintiff's Fourth Amendment rights. For the reasons set forth above, plaintiff has sufficiently alleged an agreement between Sergeant Belanger and Kouame to accomplish that seizure. Kouame cites no cases for the proposition that to be liable pursuant to § 1983 he must have *directly* seized plaintiff.

[36]R. Doc. No. 19, at 3 ("[E]ven as alleged by plaintiff, it is clear the entire situation resulted from plaintiff's refusal to cooperate with commands issued to him by a uniformed police officer.").

[37]Kouame also contends that he cannot be liable on a theory of *respondeat superior* based on his alleged supervision of Sergeant Belanger. R. Doc. No. 19, at 2. "Section 1983 does not create vicarious or *respondeat superior* liability. Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (internal quotation marks and citations omitted). As explained above, plaintiff sufficiently alleges that Kouame was directly involved in the constitutional violation.

8

cause him to suffer such a contact." *Brown v. Diversified Hospitality Grp. Inc.*, 600 So. 2d 902, 906 (La. App. 4 Cir. 1992). "An assault is a threat of such a harmful or offensive contact." *Id.* "False imprisonment or arrest occurs when one arrests and restrains another against his will and without statutory authority." *Wilson v. City of Shreveport*, 921 So. 2d 254, 257 (La. App. 2 Cir. 2006). "The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Id.*

Both LeBouef and Kouame move to dismiss plaintiff's claims of assault, battery, and false imprisonment. Both contend that plaintiff fails to state a claim against them for assault, battery, or false imprisonment because only Sergeant Belanger is alleged to have physically confronted, touched, or seized plaintiff.[38]

With respect to Kouame, plaintiff contends that Kouame is liable for encouraging or facilitating Sergeant Belanger's actions, relying on Louisiana Civil Code article 2324.[39] Article 2324 states that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." For the same reasons that plaintiff has alleged facts which can support a finding of a conspiracy for the purposes of § 1983 liability, plaintiff has alleged facts which, taken as true, could give rise to a conspiracy between Kouame and Sergeant Belanger to commit assault, battery, or false imprisonment for purposes of article 2324. Accordingly, Kouame's motion to dismiss those claims should be denied.

With respect to LeBouef, on the other hand, plaintiff has not alleged facts sufficient to state a claim of a conspiracy to commit any of those intentional torts. The only facts plaintiff alleges are

---

[38]R. Doc. No. 8-2, at 5; R. Doc. No. 10-2, at 10.
[39]R. Doc. No. 12, at 2-3.

that LeBouef "used his cell phone to summon Sgt. Belanger" and deliberately misstated the store policy.[40] In his opposition memorandum, plaintiff does not respond to LeBouef's contention that these allegations fail to state a claim for assault, battery, or false imprisonment, and instead defends only his infliction of emotional distress claims as to LeBouef.[41] Accordingly, the Court agrees that plaintiff has not stated a claim against LeBouef for assault, battery, or false imprisonment, and that LeBouef's motion should be granted as to those claims.

### 2.)   Intentional Infliction of Emotional Distress

Under Louisiana law, an intentional infliction of emotional distress claim requires that 1) the conduct of the defendant be "extreme and outrageous," 2) the plaintiff suffer severe emotional distress, and 3) the defendant desire to inflict the emotional distress or know that severe emotional distress would be substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "Louisiana courts have staunchly adhered to the standard established in *White*." *LaBove v. Raftery*, 802 So. 2d 566, 578 (La. 2001).

In order to be "extreme and outrageous," the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So. 2d at 1209. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 1209-10 (citing Restatement (Second) of Torts, § 46 cmt. d).

---

[40] R. Doc. No. 3, at ¶ 16.
[41] R. Doc. No. 9, at 2-3.

10

The Louisiana Second Circuit Court of Appeal, citing *Nicholas v. Allstate Insurance Co.*, 765 So. 2d 1017 (La. 2000), recently elaborated on the applicable standard for the first element:

> It is not enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and leave him to exclaim, "Outrageous."

*Fletcher v. Wendelta, Inc.*, 999 So. 2d 1223, 1230 (La. App. 2 Cir. 2009). "[P]roving outrageous conduct by the defendant" is a "heavy burden" for plaintiff to meet. *Succession of Harvey v. Dietzen*, 716 So. 2d 911, 917 (La. App. 4 Cir. 1998). "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *White*, 585 So. 2d at 1209.

Both LeBouef and Kouame move to dismiss plaintiff's claim for intentional infliction of emotional distress. In opposition, plaintiff contends that their alleged conduct was outrageous because it is proscribed by Louisiana Revised Statute 14:59(A)(5), which defines "criminal mischief" as including "[g]iving of any false report or complaint to a sheriff, or his deputies, or to any officer of the law relative to the commission of, or an attempt to commit, a crime." But even if the conduct plaintiff alleges violated that statute, "it is not enough that the defendant acted with an intent which is . . . criminal." *Fletcher*, 999 So. 2d at 1230. Intentional infliction of emotional distress requires allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* Plaintiff has not alleged conduct by either LeBouef or Kouame that is so

11

outrageous as to state a claim for intentional infliction of emotional distress. Accordingly, the Court concludes that both motions to dismiss should be granted as to the intentional infliction of emotional distress claims.

### 3.)    Negligent Infliction of Emotional Distress

"Louisiana law does not generally recognize an independent cause of action for negligent infliction of emotional distress. . . . The cause of action is available under limited circumstances only." *DirecTV, Inc. v. Atwood*, No. 03-1457, 2003 WL 22765354, at *3 (E.D. La. Nov. 19, 2003) (emphasis added) (internal quotation marks omitted).   Recovery for negligent infliction of emotional distress, when available, is governed by Louisiana Civil Code Article 2315 but recovery is limited to cases presenting special "involving the 'especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'" . *See Powell v. Brookshire's Grocery Co.*, 705 So. 2d 286, 291-92 (La. App. 2 Cir. 1997) (quoting *Moresi v. State ex. rel. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990)). ; *see also DirecTV*, 2003 WL 22765354, at *3.

"The most common thread of the special circumstances . . . cases collected in *Moresi* is that each of those cases present facts proving that the defendant's act created a very strong and obvious likelihood that the plaintiff would suffer genuine and severe mental distress." *Covington v. Howard*, 146 So. 3d 933, 940 (La. App. 2 Cir. 2014). "Typically, the defendant's conduct under the circumstances is deemed so unconscionable or outrageous . . . that a person of ordinary sensibilities would suffer genuine and severe emotional distress." *Id.*; *see also Lester v. Sec'y of Veterans Affairs*, 514 F. Supp. 2d 866, 881 (W.D. La. 2007) ("[A] plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent

12

conduct is deemed to be outrageous."); *Harris v. St. Tammany Parish Hosp. Serv. Dist. No. 1*, No. 2011-CA-0941, 2011 WL 6916523, at *16-17 (La. App. 1 Cir. Dec. 29, 2011) (affirming an award of damages to a surviving spouse for negligent infliction of emotional distress based on a hospital's failure to send the deceased spouse's body to the coroner for an autopsy after a sudden and unexplained death).

Both LeBouef and Kouame move to dismiss plaintiff's negligent infliction of emotional distress claims. Plaintiff's oppositions are conclusory and they do not cite any factually comparable cases.[42] With respect to both LeBouef and Kouame, the Court concludes that plaintiff has failed to allege the kind of "special circumstances" and "unconscionable or outrageous conduct" that support a claim for negligent infliction of emotional distress. *See Covington*, 146 So. 3d at 940. Accordingly, LeBouef's and Kouame's motions to dismiss the negligent infliction of emotional distress claims should be granted.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss filed by defendant, Craig LeBouef, is **GRANTED** and that all of plaintiff's claims against Craig LeBouef are **DISMISSED WITH PREJUDICE**.[43]

---

[42]R. Doc. No. 9, at 3; R. Doc. No. 12, at 3.

[43]Plaintiff has already amended his complaint once and, in response to LeBouef's motion, he did not articulate any additional specific facts he could allege against LeBouef in another amended complaint. Accordingly, the Court finds no need to grant plaintiff leave to amend as to LeBouef.

13

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendant, Francis Armand Kouame, is **GRANTED** with respect to plaintiff's claims for intentional and negligent infliction of emotional distress, which claims are **DISMISSED WITH PREJUDICE**. Kouame's motion is **DENIED** in all other respects.

New Orleans, Louisiana, April 14, 2015.

*[signature]*
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**